**In the Matter of CONFABCO,
INC., Debtor.**

**Michael CHIASSON, Trustee, Plaintiff,**

**v.**

**CHAPARRAL STEEL COMPANY,
Defendant.**

**Bankruptcy No. 94–11296–JAB.**

Adv. No. 94–1193.
United States Bankruptcy Court,
E.D. Louisiana.

Feb. 27, 1995.

Deborah U. Weisler, Omer F. Kuebel, III, Draper & Culpepper, New Orleans, LA, for trustee/plaintiff.

Steven A. Jacobson, J. Thomas Hamrick, Jr., Simon, Peragine, Smith & Redfearn, L.L.P., New Orleans, LA, for defendant.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

This matter comes before the Court upon cross motions for partial summary judgment filed by Michael Chiasson, Trustee ("trustee") for Confabco, Inc. ("Confabco") (Pl. 11) and by Chaparral Steel Company ("Chaparral") (Pl. 8). The parties are in agreement that there are no genuine issues of material fact and that judgment should be entered as a matter of law. The court has reviewed the pleadings, record, and applicable law, and makes the following determinations.[1]

### I. FINDINGS OF FACT

On November 1, 1991, an officer of Confabco executed a secured note in favor of Chaparral in the principal amount of $152,999.28. (Pl. 8, Ex. 3(A)). On February 6, 1992, an officer of Confabco executed a security agreement in favor of Chaparral purporting to grant Chaparral a security interest in Confabco's accounts, inventory, equipment, fixtures, general intangibles, and proceeds. (Pl. 8, Ex. 3(B)). On March 1, 1993, Confabco executed a second secured note in favor of Chaparral in the principal amount of $50,016.16. (Pl. 8, Ex. 3(C)).

Chaparral filed a UCC–1 Financing Statement (the "financing statement") providing notice of its security interest in Confabco's property. (Pl. 8, Ex. 3(D)). A description of the property covered is attached to the financing statement as Exhibit A. The Louisiana Secretary of State issued a written confirmation that the financing statement was

---

1. This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052. The court has jurisdiction over the matter under 28 U.S.C. § 1334. The matter is a core proceeding under 28 U.S.C. § 157(b)(2).

filed in Orleans Parish on February 19, 1992. (Pl. 17, Exhibit 2).

The financing statement listed "Paul A. Mohtares, Agent" as the secured party, and included Mohtares's address as the address of the secured party. (Pl. 17, Ex. 1). No taxpayer identification number or social security number was given for the secured party, nor did the secured party sign the financing statement. *Id.* The financing statement listed "Confabco, Inc." as the debtor, and included Confabco's federal tax number and address. No mention of "Chaparral Steel Company" was included anywhere in the financing statement. *Id.*

Mohtares was Chaparral's attorney in connection with the preparation, execution and filing of the financing statement and the related documents. (Pl. 17, Affidavit of Mohtares, ¶ 2). Prior to filing the financing statement, Mohtares and a representative of his client, Chaparral, confirmed to Confabco by letter of February 18, 1992 as follows:

> That no obligations or indebtedness of Confabco exists in favor of Agent [Mohtares], except in his capacity as Agent of Chaparral;
>
> That the Financing Statement does not evidence or create, and shall not be construed as evidencing or creating, any obligations or indebtedness of Confabco in favor of Agent except in his capacity as Agent of Chaparral.
>
> That, in the Financing Statement, Agent is acting solely as agent or nominee on behalf of Chaparral; and
>
> That the Security Agreement and Financing Statement secure only the obligations of Confabco as provided in that certain Secured Note dated November 1, 1991, executed by Confabco in favor of Chaparral in the amount of $152,999.28 and the Security Agreement.

(*Id.* at ¶ 5 and Exhibit 3).

The debtor filed for bankruptcy under Chapter 7 of the Bankruptcy Code on April 26, 1994. The trustee filed the pending adversary proceeding on August 22, 1994 to determine the extent, validity and priority of Chaparral's purported security interest in the debtor's movable property.

## II. *CONCLUSIONS OF LAW*

The complaint seeks declaratory relief as to (a) whether Chaparral has a valid security interest in the property of Confabco; (b) the amount of indebtedness secured by the security agreement; and (c) which specific property of Confabco is encumbered by the security interest if deemed valid.

Chaparral's motion for partial summary judgment raises issues as to the amount of indebtedness secured by Chaparral's security agreement, and whether the notes executed by Confabco were executed with corporate authority. The parties subsequently stipulated, however, that the sole legal issue to be resolved is whether Chaparral has a perfected security interest in the debtor's movable property pursuant to La.R.S. 10:9–402.

Chaparral claims a security interest in all of the debtor's accounts, inventory, equipment, fixtures, general intangibles and proceeds based upon the security agreement and the financing statement. The trustee asserts that the financing statement is insufficient to perfect Chaparral's alleged security interest, and seeks to avoid Chaparral's security interest under the "strong arm powers" provided by 11 U.S.C. § 544.

■ State law controls the validity and effect of liens in the bankruptcy context. *In re Copper King Inn, Inc.*, 918 F.2d 1404, 1407 (9th Cir.1990).

The provisions of La.R.S. 10:9–302 require that a financing statement must be filed to perfect a security interest in the property at issue. The requisites of financing statements are set forth in La.R.S. 10:9–402. This statute provides in pertinent part as follows:

> (1) A financing statement is sufficient if it gives the names of the debtor and the secured party (or if there is more than one secured party, of any of them), is signed by the debtor, gives an address of the secured party named from which information concerning the security interest may be obtained, and sets forth the social security number or employer identification number, as applicable, of the named secured party, gives a mailing address of the debtor and sets forth his social security number or

employer identification number, as applicable, contains a statement indicating the types, or describing the items, of collateral. La.R.S. 10:9–402(1) (West 1993).

The trustee maintains that the financing statement is deficient on several grounds which will be addressed in turn.

A. *Co-extensive filing of the financing statement with the execution of the security agreement*

■ The trustee maintains that the financing statement was filed on December 19, 1992 and was in no way filed concurrently with or co-extensively with the execution of the security agreement executed by the debtor in favor of Chaparral on February 6, 1992.

As previously discussed, the Louisiana Secretary of State issued a written confirmation that the financing statement was filed in Orleans Parish on February 19, 1992. (Pl. 17, Exhibit 2). Therefore, the trustee's argument that the financing statement was not filed concurrently or co-extensively with the execution of the security agreement is erroneous.

B. *The designation of "Paul A. Mohtares, Agent" as the secured party*

■ The trustee argues that Chaparral's security interest is not perfected because the financing statement lists the secured party as "Paul A. Mohtares, Agent", and does not mention Chaparral at all.

Louisiana recently adopted its version of Article 9 of the Uniform Commercial Code. No Louisiana jurisprudence exists on the pending issues, so the court must turn to the jurisprudence of other jurisdictions that have considered similar issues.

The trustee relies on two cases, *In re Copper King Inn, Inc.*, 918 F.2d 1404 (9th Cir.1990) and *In re E.A. Fretz Co., Inc.*, 565 F.2d 366 (5th Cir.1978), as authority for the proposition that the listing of "Paul A. Mohtares, Agent" is insufficient to comply with La.R.S. 10:9–402. These cases are factually inapposite and do not control the outcome of this case.

The *Fretz* case is distinguishable from the present case in that *Fretz* did not involve a principal-agent relationship. *Fretz* involved an attempt by unsecured subsidiary companies of the secured party to secure themselves through their parent company's security agreement. The fact specific nature of the *Fretz* decision has been commented on by other courts. *See In re Cycle Products Distributing Co.*, 118 B.R. 643, 646 (Bankr. S.D.Ill.1990) ("The *Fretz* case is easily distinguishable from the current situation. In *Fretz*, there was a deliberate attempt by Revlon and its affiliates to improve their position by transforming unsecured debt to secured.") In the instant case there is no subsidiary attempting to take advantage of a parent's security agreement.

The *Copper King* case is also inapplicable. In *Copper King*, an individual, John T. Noonan ("Noonan"), was "erroneously listed" as the secured party on a financing statement. 918 F.2d at 1405. The Trust Corporation of Montana ("Trust Corporation") was supposed to have been named as the secured party. *Id.* Noonan was also a director, officer and shareholder of the debtor corporation, Copper King, Inc. The court held:

> In view of the commercial realities of this case, we find the financing statement was seriously misleading.
>
> Trust Corporation responds that inquiries could have been made to Noonan, who would have clarified any ambiguity. This argument carries little weight. There is no guarantee an inquirer would have received a correct answer in these circumstances, where the incentive to provide misinformation may often be great.

918 F.2d at 1408. In response to the Trust Corporation's argument that Noonan was its agent when he signed the financing statement, the court stated:

> We are aware that, as a general matter, "an agent may appear as debtor or creditor or sign necessary papers on behalf of a principle." [sic] Anderson, *Uniform Commercial Code* § 9–402:9. However, no evidence supports Trust Corporation's contention that such a relationship existed in this case. Even if we were to accept Trust Corporation's ad hoc theory about how one might "characterize" Noonan as an agent, the more important point is that a potential creditor never would have guessed that

Noonan occupied such a position. Indeed, certain evidence indicated the contrary since Noonan, acting purely as an individual, had loaned Copper King $62,000 of the $225,000 debt covered by the financing statement. A potential creditor stumbling across this information might naturally have assumed that Noonan was also the personal creditor of the $100,000 sum that in reality had been advanced by Northwest.

918 F.2d at 1409.

Contrary to *Copper King,* in the case at bar the financing statement specifically disclosed that Mohtares was an agent for the secured party. Further, unlike *Copper King,* in the present case there is no evidence that Mohtares had any relationship to the parties other than that of agent to Chaparral. The limited nature of Mohtares's relationship was confirmed to the debtor by the letter of February 18, 1992 which was signed by both Mohtares and an officer of Chaparral. Consequently, Mohtares had no conflict of interest as did Noonan in *Copper King.*

Courts have rejected arguments similar to those made by the trustee in this case. In *Industrial Packaging Products Co. v. Ft. Pitt Packaging International, Inc.,* 399 Pa. 643, 161 A.2d 19, 21 (1960), the court upheld a financing statement that listed the collecting agent of the secured party as the principal creditor. The court stated, "The purpose of filing th[e] financing statement is to give notice to potential future creditors of the debtor or purchasers of the collateral. It makes no difference as far as such notice is concerned whether the secured party listed in the filing statement is a principal or an agent, and no provision in the Uniform Commercial Code draws such a distinction." *Id.*

Similarly, in the case of *In re Cushman Bakery,* 526 F.2d 23, 30 (1st Cir.1975), *cert. denied,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976), the court relied on the *Industrial Packaging* case in upholding a financing statement that listed a nominee as the secured party.

■ The purpose of filing a financing statement is to put third parties on notice that a debtor's property is subject to a security agreement. Any potential creditor seeing the word "agent" following Mohtares's name on the financing statement would be put on notice that he was acting on behalf of another person or entity as the actual secured party. Consequently, the designation of "Paul A. Mohtares, Agent" as the secured party did not prevent perfection of Chaparral's security interest. The trustee's argument for an uncompromising reading of La. R.S. 10:9–402(1) must fail.

■ Further support for this conclusion is provided by La.R.S. 10:9–402(8) which provides:

> A financing statement substantially complying with the requirements of this Section is effective even though it contains minor errors which are not seriously misleading.

The determination of whether an error in a financing statement is misleading depends on the facts of the particular case. *In re Strickland,* 94 B.R. 898, 902 (Bankr.N.D.Miss. 1988).

The court finds that the listing of "Paul Mohtares, Agent" as the secured party was not misleading under the facts of this case.

**C. *The listing of Mohtares's address instead of Chaparral's on the financing statement***

■ The trustee also argues that the financing statement is insufficient because the mailing address provided for the secured party is not that of Chaparral.

The court disagrees. La.R.S. 10:9–402(1) provides in pertinent part:

> (1) A financing statement is sufficient if it ... gives an address of the secured party named from which information concerning the security interest may be obtained, and ..., gives a mailing address of the debtor....

La.R.S. 10:9–402(1). On its face, therefore, Section 9:402(1) requires the address of the debtor, but only the address of the secured party "from which information concerning the security interest may be obtained".

"[T]he address of the secured party is only necessary for informational purposes."

**426**

Hawkland, Lord & Lewis, *Uniform Commercial Code Series* § 9–402:11 (Art. 9).

Anyone seeking information about the secured party in this case could have contacted Mohtares. The use of Mohtares's address substantially complies with the statutory requisites set forth in La.R.S. 10:9–402(1) in that Mohtares is the party named from which information concerning the security interest could be obtained. Under the facts of this case, the listing of Mohtares's address on the financing statement instead of Chaparral's complies with La.R.S. 10:9–402(1).

D. *The failure to include the secured party's social security or taxpayer identification number of a security interest*

 The trustee further argues that the financing statement is deficient because it does not provide the taxpayer identification number or federal social security number of the secured party as required by La.R.S. 10:9–402.

There appears to be no jurisprudence that has dealt with the issue of a lack of a secured party's taxpayer identification number or social security number on a financing statement. A financing statement substantially complying with the requirements under La. R.S. 10:9–402, however, is effective even though it contains minor errors which are not seriously misleading. La.R.S. 10:9–402(8). The lack of a social security or taxpayer identification number is not seriously misleading in that any party seeking this information could have contacted Mohtares, the secured party's agent. Because the financing statement is not misleading the Court holds that Chaparral substantially complied with the requirements for perfecting its security interest in Louisiana.

E. *The failure to include the signature of the secured party*

 The trustee also argues the financing statement is invalid because it was not signed by the secured party.

 This argument is without merit. Although La.R.S. 10:9–402 requires the signature of the debtor, there is no such requirement for the secured party. La.R.S. 10:9–402(1). While the signature of the debtor is important because it shows the debtor's as-

sent to a filing that will encumber or cloud title to the debtor's assets, there is no good reason to require the signature of the secured party on the financing statement. Hawkland, Lord & Lewis, *UCC Series* § 9–402:12 (Art. 9). The absence of the secured party's signature on the financing statement does not thwart perfection of Chaparral's security agreement.

### III. *CONCLUSION*

The court concludes that the financing statement filed on February 19, 1992 is valid, and gives Chaparral a perfected security interest in Confabco's movable property. A judgment will be entered in accordance with this memorandum opinion.