In re: STRATOSPHERE CORPORA-
TION, a Delaware corporation;
Stratosphere Gaming Corporation, a
Nevada corporation, Debtors.

Mcdonald's Corporation, a Delaware
corporation, Appellant,

v.

Stratosphere Corporation, a Delaware
corporation, Appellee.

No. 01–15001.

BAP No. NV–99–01634–MaDRy.

BK. Nos. 97–20554–GWZ
97–20555–GWZ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 2001.

Decided Nov. 29, 2001.

Before CANBY, GRABER, and PAEZ,
Circuit Judges.

MEMORANDUM *

McDonald's Corporation appeals from a
decision of the Bankruptcy Appellate Pan-

---

\* This disposition is not appropriate for publica-
tion and may not be cited to or by the courts
of this circuit except as provided by Ninth
Circuit Rule 36–3.

el affirming the bankruptcy court's decision that (1) two pre-bankruptcy payments to McDonald's by Stratosphere Corporation (Debtor) are avoidable preferences under 11 U.S.C. § 547(b) and that (2) McDonald's has no claim for rejection damages stemming from Debtor's rejection of McDonald's lease. We affirm.

I. *Whether the bankruptcy court erred in determining that McDonald's did not have an equitable lien on the escrow account or related segregated account.*

■ The question whether McDonald's had a valid equitable lien on the construction funds in the escrow account or related segregated account for purposes of bankruptcy is governed by state law. *Trust Corp. of Mont. v. Patterson (In re Copper King Inn, Inc.)*, 918 F.2d 1404, 1407 (9th Cir.1990). Under Nevada law, for an equitable lien to be based on a contract between two parties, there must be (1) an identifiable res and (2) an indication that the parties intended that res to serve as security for a debt. *Topaz Mut. Co. v. Marsh*, 108 Nev. 845, 839 P.2d 606, 612–13 (1992); *see also Ferrara v. Firsching*, 92 Nev. 38, 544 P.2d 1198, 1199–2000 (1976) (holding that an agreement must evidence the parties' intent to create a security interest to support an equitable lien).

Contrary to McDonald's argument, Paragraph 11 of the Letter Agreement contains no terms demonstrating that Debtor intended to grant McDonald's a security interest in the funds in the escrow account or in the associated segregated account. Instead, as the bankruptcy court found, that paragraph simply identifies Debtor's intended source of payment for its obligations to McDonald's. Consequently, the bankruptcy court did not err by concluding that McDonald's did not have an equitable lien.

II. *Whether the bankruptcy court's conclusion that the challenged payments were not in the ordinary course of business is clearly erroneous.*

A payment otherwise avoidable as a preference under 11 U.S.C. § 547(b) cannot be avoided to the extent that it is made in the ordinary course of business. 11 U.S.C. § 547(c)(2).

To qualify for the ordinary course exception, a creditor must prove by a preponderance of the evidence that 1) the debt and its payment are ordinary in relation to the past practices between the debtor and the creditor; *and* 2) the payment was ordinary in relation to prevailing business standards.

*Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.)*, 25 F.3d 728, 732 (9th Cir.1994) (citation and internal quotation marks omitted) (emphasis added). Factors relevant to the determination

whether transfers are ordinary in relation to past practices are: 1) the length of time the parties were engaged in the transactions at issue; 2) whether the amount or form of tender differed from past practices; 3) whether the debtor or creditor engaged in any unusual collection or payment activity; and, 4) whether the creditor took advantage of the debtor's deteriorating financial condition.

*Id.*

■ The bankruptcy court's determination that the payments were not "ordinary in relation to past practices between" McDonald's and Debtor is not clearly erroneous. As the court found, McDonald's engaged in a variety of non-ordinary collection practices with respect to the challenged payments. It sent several demand letters, retained counsel for assistance in collection, and threatened to withhold rental payments if Debtor did not meet its obligations. Further, the fact

that the payments were made from Debtor's operating account, instead of from the escrow account, also made the payments unusual in the relationship between Debtor and McDonald's.

Our affirmance of the bankruptcy court's finding that the payments were not ordinary in relation to the past practices of Debtor and McDonald's precludes the application of 11 U.S.C. § 547(c)(2). Therefore, we need not and do not address McDonald's arguments that the payments were ordinary in relation to industry standards.

III.  *Whether the bankruptcy court erred in concluding that McDonald's claim for rejection damages is barred as a matter of law.*

The bankruptcy court correctly held that McDonald's claim for damages stemming from the rejection of the lease agreement was barred by 11 U.S.C. § 365(h), because McDonald's remained in possession of the leased premises. On appeal, McDonald's attempts to avoid the application of 11 U.S.C. § 365(h)(2) by arguing that (1) the agreement on which McDonald's bases its claim for rejection damages is neither a lease nor an executory contract and, thus, is not subject to rejection under 11 U.S.C. § 365; and (2) Debtor is not a lessor for purposes of the statute because it assigned its interest in the lease to Strato–Retail.

We reject McDonald's first argument, because McDonald's argued in its proof of claim that it was entitled to rejection damages under the lease. It cannot now argue that it seeks rejection damages under the Letter Agreement—which it alleges is neither a lease nor an executory contract— rather than under the lease. McDonald's second argument is also unpersuasive. There is no dispute that Debtor was the original landlord and that it was not released from its obligations under the lease when it assigned the lease. Accordingly, Debtor is still a lessor for purposes of § 365 and, thus, § 365(h) is the applicable provision to determine McDonald's remedies.

Because McDonald's remained in possession of the leased premises following the rejection of the lease, 11 U.S.C. § 365(h)(2) bars its claim for rejection damages against the bankruptcy estate.

AFFIRMED.