In re CITY EQUITIES ANAHEIM, LTD., a California limited partnership, a/k/a City Equities Anaheim, Debtor.

CITY EQUITIES ANAHEIM, LTD., a California limited partnership, a/k/a City Equities Anaheim, Appellant,

v.

LINCOLN PLAZA DEVELOPMENT COMPANY, Appellee.

No. 92-56266.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 31, 1994.

Decided April 26, 1994.

---

Oakley C. Frost, Menke, Fahrney & Carroll, Costa Mesa, CA, for appellant.

Robin Meadow, Loeb and Loeb, Los Angeles, CA, for appellee.

Before: SNEED, THOMPSON, and RYMER, Circuit Judges.

Opinion by Judge SNEED.

SNEED, Circuit Judge:

This case involves a settlement agreement that contained a sublease and a "drop dead clause" whereby the defendant would automatically forfeit its sublease in the event of its default. Defendant defaulted, and the bankruptcy court enforced the settlement agreement according to its terms. The district court affirmed. We also affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

Plaintiff Lincoln Plaza Development Co. (Lincoln) held a leasehold interest in 17 acres of commercial property in Anaheim, California. In 1984, Lincoln subleased the Anaheim property to Inner Cities Equity, which later assigned its sublease interest to defendant City Equities Anaheim, Ltd. (CEA).

CEA entered Chapter 11 reorganization proceedings in 1990. Thereupon, Lincoln challenged CEA's sublease, contending that the assignment by Inner Cities Equity to CEA was invalid. After extensive litigation, CEA tried another tack and engaged Amerivest Workout Specialists (Amerivest) to negotiate a settlement.

This yielded some success. On May 9, 1991, CEA, Amerivest, and Lincoln entered into a Memorandum Agreement. Under this agreement, Amerivest and Mark Sandorf Properties, Inc. (Sandorf) would obtain a controlling interest in CEA. CEA eventually would acquire the property underlying Lincoln's lease. In the interim, CEA would make a series of monthly sublease payments to Lincoln. The parties later executed a formal sublease agreement to CEA.

In the Memorandum Agreement, CEA expressly waived "all claims that this Memorandum ... is not enforceable or should be cancelled, rescinded, changed or reformed" due to any actual or claimed breach by Amerivest of any duty or obligation. CEA also represented that it relied "only on the representations and agreement(s) set forth in this Memorandum and not on any other oral or written communication." CEA made similar representations in the sublease agreement.

The Memorandum Agreement also contained a "drop dead clause." In the event of its default, CEA would forfeit all claims to the Anaheim property.[1] Finally, although the parties intended the Memorandum Agreement to be fully binding, they also agreed to conclude a final and more complete Settlement Agreement.

The bankruptcy court approved the Memorandum Agreement and the related sublease. It ordered CEA to make the interim payments required under these agreements and

---

1.  Specifically, this clause provided:
    In the event of a Default hereunder or under the Settlement Agreement prior to the Closing by a CEA Party (which in the case of curable Default is not cured within the applicable period), the CEA Parties and their affiliated trusts, corporations and partnerships shall have no further claims, rights or interests whatsoever in the Anaheim Property, which shall belong to [Lincoln] free from any and all such claims, rights and interests. In addition, the CEA Parties and their [affiliates] shall have no claims whatsoever against [Lincoln or its affiliates]. (Appellee's Supplemental Excerpts of Record at 215–16.)

expressly approved the drop dead clause. The court also authorized CEA to enter into "any and all additional documents reasonably required to effectuate" the Memorandum Agreement.

The parties executed the final Settlement Agreement on August 26, 1991. The final agreement largely mirrored the Memorandum Agreement but added a provision authorizing Lincoln to enforce its terms by notice and motion.[2] Shortly after signing the Settlement Agreement, CEA discovered that Amerivest and Sandorf did not plan to fund the next monthly payment to Lincoln. As a consequence, CEA defaulted on this payment.

Lincoln then filed a motion before the bankruptcy court to enforce the drop dead provision. One can imagine hearing the trap door fall. CEA filed a brief and several declarations in opposition, alleging that Amerivest and Sandorf fraudulently induced it to enter into the various settlement agreements by promising to fund the required monthly payments. The bankruptcy court rejected CEA's contention and granted Lincoln's motion. The U.S. District Court for the Central District of California affirmed. CEA appeals, alleging that the bankruptcy court erred by (1) not conducting a full "adversary proceeding," (2) failing to approve CEA's petition for counsel before ruling on Lincoln's motion, and (3) considering the terms of the Settlement Agreement rather than limiting itself to the Memorandum Agreement. We have jurisdiction under 28 U.S.C. § 158(d).

## II.

### ENFORCEMENT OF SETTLEMENT AGREEMENTS

Settlement agreements are designed to, and usually do, end litigation, not create it. Nevertheless, disputes occasionally arise between settling parties as to the formation, terms, and enforceability of their compacts. This case involves just such a dispute and the propriety of a court's procedures in resolving that dispute.

Twenty-five years ago, the D.C. Circuit observed that "[i]n many federal courts, the practice has developed, in lieu of a full-dressed proceeding to compel observance of a settlement agreement, of bringing the dispute on less formally for handling by the trial judge." *Autera v. Robinson,* 419 F.2d 1197, 1200 (D.C.Cir.1969). Thus, "[i]t is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it." *Id.* This circuit also recognizes a trial court's inherent enforcement power. *See, e.g., Dacanay v. Mendoza,* 573 F.2d 1075, 1078 (9th Cir.1978).

The practice of summary enforcement evolved for two reasons. First is the "high judicial favor" accorded the voluntary settlement of disputes. *Autera,* 419 F.2d at 1199. Second is the efficiency of having one court see litigation through to its conclusion, thereby avoiding duplication of effort. *See id.* at 1200 n. 10.

Like many rules of thumb, this well-settled practice has limits. Summary enforcement "is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the [settlement] contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve." *Russell v. Puget Sound Tug & Barge Co.,* 737 F.2d 1510, 1511 (9th Cir.1984) (quoting *Autera,* 419 F.2d at 1200).[3] Accordingly, we have found enforcement upon motion inappropriate where material facts concerning the existence or terms of a settlement were in dispute, *Callie v. Near,* 829 F.2d 888, 890 (9th Cir.1987), or where a settlement agreement was apparently procured by fraud, *Russell,* 737 F.2d at 1511.

---

2. The Memorandum Agreement did not specify the exact nature of enforcement proceedings but stated that the parties contemplated enforcement "by means of, among other things, findings and orders by the Bankruptcy Court."

3. The exact nature of such a proceeding is unclear. The *Autera* court suggested that a hearing would entail oral testimony and cross-examination, but did not elaborate. *See Autera,* 419 F.2d at 1202. Because the bankruptcy court here enforced the settlement upon motion, we need not reach this issue.

A bankruptcy court, as a court of equity, likewise possesses the power to summarily enforce settlements. *See In re Springpark Assocs.*, 623 F.2d 1377, 1380–81 (9th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980) (bankruptcy court has inherent power to enforce settlement providing for termination of automatic stay to permit foreclosure).[4] Along with this power, of course, come the attendant limitations.

On appeal, our standard of review appears to be for abuse of discretion. *Callie*, 829 F.2d at 890. However, a court has no discretion to enforce a settlement where material facts are in dispute; an evidentiary hearing must be held to resolve such issues. *See id.*

With this history and analysis as a guide, we turn to the case before us.

## III.

### DISCUSSION

A. *Failure to Conduct an Adversary Proceeding*

CEA first claims that the bankruptcy court erred in enforcing the Memorandum Agreement upon motion. It argues that the court should have conducted an "adversary proceeding," complete with a complaint, answer, oral testimony, cross-examination, and the like. We disagree. Like any other trial court, the bankruptcy court had the inherent power summarily to enforce a settlement agreement with respect to an action pending before it. *In re Springpark Assocs.*, 623 F.2d at 1380–81. Summary enforcement is particularly suited to, and indeed seems virtually implicit in, an agreement with terms as unequivocal, and with consequences of default as utter and final, as this one.

It is true that summary enforcement is inappropriate where material facts concerning the existence or terms of a settlement agreement are in dispute. *Callie*, 829 F.2d at 890–91. Here, however, no material facts are in dispute. CEA does not dispute

its intent to be bound by the Memorandum Agreement; that agreement expressly proclaims its binding nature. Nor does CEA contest the unequivocal meaning of the drop dead clause. Rather, it argues that Amerivest fraudulently induced it to enter into the agreement by promising to fund the required payments. Even assuming that Amerivest made such promises, CEA could not have reasonably relied on them. In the Memorandum Agreement and the related sublease, CEA expressly and unambiguously admitted that it was not relying on any inducements not contained therein. *See Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1445 (9th Cir.1986); *Fisher v. Pennsylvania Life Co.*, 69 Cal.App.3d 506, 511, 138 Cal. Rptr. 181, 184 (1977). Further, CEA expressly waived the right to assert any claim against Lincoln based on Amerivest's conduct. A promise which carries on its face its own denial deserves no legal protection.

Despite the lack of a material factual dispute, CEA argues that Lincoln's motion was an action to recover property and thus constituted an adversary proceeding under Bankruptcy Rule 7001. Accordingly, it contends, the full panoply of the Bankruptcy Rules should have applied.

We may assume, without deciding, that Rule 7001 applies to settlement agreements. Even so, the proceedings here sufficiently complied with the Bankruptcy Rules. First, we reject CEA's contention that Lincoln should have preceded its motion with a formal complaint. The parties' dispute was before the court long before the Memorandum Agreement even existed. There was no need to repeat the formalities of complaint and answer to enforce the related settlement.

Second, we reject CEA's argument that the hearing on Lincoln's motion was procedurally deficient because of the lack of oral testimony or cross-examination. Like many litigants, Lincoln sought to end a suit based on the absence of any disputed material facts. In this respect, its motion was akin to a motion for summary judgment. *See*

---

4. We note also that the settlement agreement in this case contemplated enforcement by the bank-

ruptcy court that approved it. *See* note 2 *supra*.

*Tiernan v. Devoe,* 923 F.2d 1024, 1031–32 (3d Cir.1991) (likening motion to enforce settlement to motion for summary judgment).[5] Bankruptcy Rule 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure, which provides for summary judgment where no material factual dispute exists. *See* Bankr.R. 7056; Fed.R.Civ.P. 56(c). Rule 56 permits, but does not require, oral testimony. *See* Fed.R.Civ.P. 56(e). Given the absence of material facts in dispute, the procedures here more than satisfied the dictates of Rule 56 and the Bankruptcy Rules.[6]

■ Likewise, we reject CEA's claim that the bankruptcy court's summary proceeding violated due process. "Due process only requires a meaningful hearing appropriate to the nature of the case." *Jordan v. City of Lake Oswego,* 734 F.2d 1374, 1376 (9th Cir. 1984). CEA received at least the same process as any litigant facing summary judgment, and that was all the process it was due.

We need only observe that it serves no useful interest to perform elaborate procedural rites before internment of a lost cause.

**B.** *Failure to Approve CEA's Petition for Counsel*

■ CEA next contends that the bankruptcy court violated due process by failing to approve CEA's petition for new counsel before the hearing on Lincoln's motion. The facts related to this issue are as follows. Some time prior to the hearing, CEA's original counsel withdrew after receiving the bankruptcy court's permission. CEA then filed a petition to employ new counsel. The petition apparently was pending at the time of the hearing.[7] CEA's prospective new counsel appeared at the hearing on behalf of

CEA's owners. The bankruptcy court formally approved CEA's petition some time after the hearing but before CEA's appeal to the district court.

CEA fails to show any prejudice caused by the bankruptcy court's failure to approve its petition. CEA's original counsel prepared a lengthy brief in opposition to Lincoln. CEA's prospective counsel filed several supplemental declarations, argued against Lincoln at the hearing, and filed objections to the bankruptcy court's proposed findings. After obtaining formal approval, CEA's new counsel appealed to the district court and now to this court. At no point does CEA explain how its counsel would have argued any differently had formal approval been granted. Indeed, CEA's arguments on appeal are essentially the same as those raised by its owners in the bankruptcy court.

**C.** *References to the Settlement Agreement*

■ In its decision, the bankruptcy court held that the Memorandum Agreement and Settlement Agreement were valid and that CEA breached both of them. The court also held that summary enforcement was appropriate under its inherent authority to enforce settlements and under the Settlement Agreement, which provided for summary proceedings. CEA argues that the court's references to the Settlement Agreement were improper because Lincoln moved only to enforce the Memorandum Agreement and because the court had not approved the Settlement Agreement.

We need not resolve these questions. The bankruptcy court's references to the Settlement Agreement, if in error, were harmless.

---

**5.** In drawing this analogy, we do not mean to imply, nor do we need to decide, that the various rules pertaining to summary judgment govern the enforcement of settlements. Rather, an analogy to summary judgment is useful for assessing the reasonableness of settlement enforcement procedures in this case.

**6.** Rule 56(c) requires that a motion "be served at least 10 days before the time fixed for the hearing"; it also allows the adverse party to serve affidavits before the day of hearing. Fed. R.Civ.P. 56(c). Lincoln served its motion on CEA on October 4, 1991. The hearing on this motion did not occur until December 18, 1991,

well after the 10–day period required under Rule 56(c). CEA prepared a brief opposing Lincoln's motion and compiled supporting declarations. Finding no material factual dispute, the court granted Lincoln's motion.

**7.** The parties vigorously dispute the timing of CEA's petition. CEA contends that the petition was pending for "27 days prior to the hearing." Lincoln asserts that the petition was not filed until one week before the hearing. For the reasons discussed below, we need not address this dispute.

**960**

The operative provisions entitling Lincoln to relief were in the Memorandum Agreement as well. That agreement already supplied the sword and shield: the drop dead clause that terminated CEA's sublease and the no-additional-representations clause that barred its defense of fraud. The Settlement Agreement merely restated those provisions. At most, the Settlement Agreement clarified the nature of summary enforcement procedures, which already had been firmly established by precedent.

AFFIRMED.[8]

---

**8.** Lincoln has moved to strike certain portions of CEA's reply brief, which allege that Lincoln and Amerivest conspired to defraud CEA. Inasmuch as the resolution of the case is in Lincoln's favor, we deny its motion.