In re Steven Corl DECKER, Debtor.

USA/INTERNAL REVENUE
SERVICE, Appellant,

v.

VALLEY NATIONAL BANK; Steven
Corl Decker; and Susan Decker,
Appellees.

BAP No. CC–95–1895–HJK.
Bankruptcy No. ND 94–15402 RR.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted May 22, 1996.

Decided July 30, 1996.

Gregory A. Roth, Los Angeles, CA, for U.S.

Steven Corl Decker, Santa Barbara, CA, pro se.

Shelly Rothschild, Los Angeles, CA, for Valley National Bank.

Before: HAGAN, JONES, and KLEIN,[1] Bankruptcy Judges.

## OPINION

HAGAN, Bankruptcy Judge:

Steven C. Decker ("Debtor") is a debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code. The Debtor filed a motion requesting the bankruptcy court to authorize the sale of a piece of real estate, and the payment of part of the proceeds to Valley National Bank ("VNB"), a creditor holding a security interest in the property. The Internal Revenue Service ("IRS") filed an objection to the motion, contending that it had a senior lien against the property for unpaid estate taxes. The bankruptcy court authorized the sale and the payment of a portion of the proceeds to VNB. The IRS appeals. We REVERSE IN PART, AFFIRM IN PART, and AFFIRM THE ORDER.

## FACTS

Chester J. Decker, the father of the Debtor, died on July 3, 1985. In his will, Chester J. Decker devised to the Debtor a piece of real property located at 63 Royal Avenue, Borough of Hawthorne, County of Passaic, New Jersey (the "property"). It is this property, and its subsequent disposition, that is the subject of this appeal.

Three executors were appointed pursuant to the terms of Chester J. Decker's will. On or about October 2, 1986, the executors moved for a determination of federal estate

---

1. Hon. Christopher M. Klein, Bankruptcy Judge for the Eastern District of California, sitting by

tax liability under 26 U.S.C. § 2204.[2] The executors also moved for an extension of time in which to pay the federal estate tax liability under section 6166. The IRS agreed to the extension of time, permitting the estate to pay off the estate tax liability over 15 years.

On June 5, 1987, the Debtor was substituted as executor, and the original executors were released by the state court.

On September 21, 1987, the Debtor mortgaged the property to VNB for $250,000.00. The mortgage specifically noted that the Debtor had obtained the property through the estate of Chester J. Decker.

The estate of Chester J. Decker defaulted on its estate tax liability in October, 1992. Although the IRS issued several notices of its intent to levy, it never actually levied against the property.

The Debtor filed his bankruptcy case under chapter 11 on December 20, 1994. The IRS was listed as an unsecured creditor holding an unliquidated, disputed claim in the amount of $331,000.

On May 30, 1995, the Debtor filed a "Motion for Order Authorizing Debtor and Debtor-in-Possession to Sell Real Property and Pay Off Pre- and Post–Petition Secured Debt Thereon and to Pay Costs Attendant to the Sale." Through the motion, the Debtor sought to sell the property for $555,000, and to use the proceeds to pay off prepetition and postpetition debt secured by the property, among other things.[3]

The IRS filed an opposition to the motion on June 30, 1995. The IRS asserted that the property was subject to a lien in favor of the IRS for the unpaid estate taxes, and that this lien was superior to that held by VNB. The IRS presented an affidavit indicating that unpaid estate taxes, including penalties and interest through the petition date, totaled $1,035,524.34. The IRS indicated that it was amending its proof of claim to reflect this amount as a secured debt. The IRS opposed the motion on the following grounds, among

others: (1) the motion was an attempt to determine the validity, priority, or extent of liens, and therefore should have been brought as an adversary proceeding under Fed.R.Bankr.P. 7001; and (2) the IRS had a lien against the property under section 6324. The IRS noted that its lien under section 6324 would normally expire on July 3, 1995 (less than one week after the opposition was filed), but argued that this expiration was stayed by the Debtor's bankruptcy filing.

The Debtor and VNB both responded to the IRS's opposition. Both responses were filed after July 3, 1995, and both contended that the IRS's section 6324 lien had expired on that date, leaving the IRS unsecured. Both VNB and the Debtor asserted that the 10–year limitation on liens under section 6324 was durational, and not in the nature of a statute of limitations, and that therefore the lien was required to be foreclosed within the 10–year period. VNB additionally contended that: (1) the determination of priority between the IRS and VNB should be adjudicated as an adversary proceeding; (2) the doctrine of marshaling should be applied against the IRS, because the IRS had multiple items of valuable collateral while VNB only had a lien against the one piece of property at issue; (3) the IRS had forfeited its lien under section 6324 in favor of a lien under section 6324A, and that a section 6324A lien was not effective against VNB; and (4) that if the IRS held a section 6324 lien, it was not effective as against VNB.

A hearing was held on August 3, 1995. At this hearing, both the IRS and VNB again contended that the question of priority as between them should be adjudicated as an adversary proceeding. The court rejected this argument, holding that this was, in effect, a summary judgment motion involving wholly legal questions. Transcript of August 3, 1995 Hearing, at 23–24. The court concluded that (1) the section 6324A lien would not be enforceable against the holder of a security interest; (2) the section 6324 lien

designation.

**2.** Hereinafter, all references to "section" are to the respective section of the Internal Revenue Code, Title 26, United States Code.

**3.** The initial motion failed to indicate whether the sale was free and clear of liens, and was somewhat ambiguous regarding whether VNB was to be paid in full.

was not enforceable against the holder of a security interest; (3) the 10–year limitation on section 6324 liens was durational, not a statute of limitations; and (4) the IRS was subject to the doctrine of marshaling.

The court subsequently entered an order memorializing its decision. The court permitted the sale to go forward, and directed that at closing VNB was to be paid the full amount of its secured claim against the Debtor from the proceeds of the sale. The IRS filed a timely notice of appeal.[4]

## ISSUES

1. Whether the bankruptcy court properly concluded that VNB's lien was senior to that allegedly held by the IRS.

2. Whether the bankruptcy court properly adjudicated the validity and priority of the IRS's lien outside of the context of an adversary proceeding.

## STANDARD OF REVIEW

■ The bankruptcy court suggested that its ruling was in the nature of a motion for summary judgment. Given the context, and the fact that the IRS challenges the failure to provide an adversary proceeding, we find it appropriate to apply the standard of review for summary judgment motions, and review the bankruptcy court's order de novo. *See Gayden v. Nourbakhsh (In re Nourbakhsh),* 67 F.3d 798, 800 (9th Cir.1995).

## DISCUSSION

*1. This Appeal is Not Moot.*

■ VNB contends that this appeal is moot because the property has been sold and the IRS failed to obtain a stay pending appeal. We reject this argument. The IRS does not seek to undo the sale here; it argues that VNB is not entitled to the proceeds of the sale. Where the order appealed involves the distribution of funds and the party who received the funds is a party to the appeal, the appeal is not moot because the appellate court has the power to fashion

effective relief. *Spirtos v. Moreno (In re Spirtos),* 992 F.2d 1004, 1006–07 (9th Cir. 1993). In the event of an adverse decision on appeal, VNB could be required to repay the funds. This appeal is not moot.

*2. The 10–Year Limitation Period on the Section 6324 Lien Was Stayed by the Debtor's Bankruptcy.*

■ Section 6324 provides for the creation of a lien for estate taxes on the gross estate. "Unless the estate tax imposed by chapter 11 is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the decedent for 10 years from the date of death...." 26 U.S.C. § 6324(a)(1). This lien does not need to be recorded to be valid, even against a subsequent purchaser for value with no actual knowledge of the lien. *United States v. Vohland,* 675 F.2d 1071, 1074–76 (9th Cir.1982).

Both VNB and the Debtor contend that a section 6324 lien is a durational lien, not a statute of limitations. *See, e.g., United States v. Davis,* 52 F.3d 781 (8th Cir.1995); *United States v. Potemken,* 841 F.2d 97, 101 (4th Cir.1988). Those cases holding that section 6324 is durational require that the IRS actually complete foreclosure against the property prior to the expiration of the 10–year time limit. *See, e.g., Potemken,* 841 F.2d at 100–01. VNB and the Debtor therefore contend that the IRS was required to have foreclosed its lien by July 3, 1995, and that the lien terminated on that date.

The IRS asks that we follow a minority of cases and hold that the 10–year period is a statute of limitations. *E.g., United States v. Warner,* 56 A.F.T.R.2d 85–6583, 85–2 U.S.T.C. ¶ 13,641, 1985 WL 2575 (S.D.N.Y. 1985). The IRS also contends that the Debtor's bankruptcy stayed the running of the 10–year limitation period on section 6324 liens.

It is unnecessary for us to resolve whether the 10–year time limit of section 6324 is limitational or durational; the period's expiration was stayed during the Debtor's bank-

---

4. The IRS filed a notice of appeal on August 14, 1995, after the court orally announced its ruling, and filed an amended notice of appeal on October 24, 1995, after the court's order was entered. Both notices of appeal were timely. *See* Fed. R.Bankr.P. 8002(a).

ruptcy by 11 U.S.C. § 108(c). That section provides in its relevant part:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ..., and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c).

The Ninth Circuit Court of Appeals has held that 11 U.S.C. § 108(c) applies to both statutes of limitation and to durational periods. *Miner Corp. v. Hunters Run Ltd. Partnership (In re Hunters Run Ltd. Partnership)*, 875 F.2d 1425, 1427, 1429 (9th Cir. 1989) (mechanic's lien). If section 6324 is a statute of limitations, then 11 U.S.C. § 108(c) plainly applies. If section 6324 is durational, foreclosing on the property constitutes "continuing a civil action" within the meaning of 11 U.S.C. § 108(c). *See Morton v. Nat'l Bank (In re Morton)*, 866 F.2d 561, 566 (2d Cir.1989) (execution on a judgment lien is a continuation of the civil proceeding) (cited with approval in *Hunters Run*, 875 F.2d at 1429). Thus, section 108(c) acts to stay the termination of a section 6324 lien regardless of whether the 10–year period is durational or limitational. Any other result would create the "substantial inequity" of allowing the period to expire while the bankruptcy laws stayed action to save the lien, and would permit debtors to unilaterally shorten limitations periods by the strategic filing of a bankruptcy petition. *Morton*, 866 F.2d at 567.

Under 11 U.S.C. § 108(c), the 10–year limitation period was stayed, and the IRS had a valid, existing lien against the property on the date the court made its ruling. The bankruptcy court incorrectly concluded that the IRS's lien expired on July 3, 1995. We REVERSE this finding by the bankruptcy court.

### 3. The Bankruptcy Court Erroneously Applied the Doctrine of Marshaling.

■ The bankruptcy court also erred in its conclusion that the doctrine of marshaling could be applied against the IRS. The court apparently concluded that the IRS had multiple other items of collateral, while VNB only had the lien against the property to be sold. The Ninth Circuit Court of Appeals has expressly rejected the application of the doctrine of marshaling to the enforcement of federal tax liens.

> We hold that a junior lienholder cannot invoke the marshaling doctrine to prevent the United States from enforcing its tax liens against any property for which enforcement is authorized by the applicable federal statutes. A contrary holding would create a substantial burden, unauthorized by statute, upon the collection of federal revenue.

*Silverstein v. United States (In re Ackerman)*, 424 F.2d 1148, 1150 (9th Cir.1970) (citations omitted). *See also Kovacs v. United States*, 355 F.2d 349, 351 (9th Cir.) ("[T]o require the Government to pick out and foreclose only those liens which will create the least hardship on third parties, would impose a considerable burden on the revenue collection process."), *cert. denied*, 384 U.S. 941, 86 S.Ct. 1460, 16 L.Ed.2d 539 (1966). Because the bankruptcy court erred as a matter of law, we REVERSE this portion of the holding.

### 4. Pursuant to Section 6324(a)(3), VNB's Mortgage is Not Subject to the IRS's Lien.

■ However, we AFFIRM the result in this case. VNB and the Debtor contended, and the bankruptcy court agreed, that VNB's lien was senior to that of the IRS under the terms of 26 U.S.C. § 6324(a)(3). This section states:

> The provisions of section 2204 (relating to discharge of fiduciary from personal liability) shall not operate as a release of any

part of the gross estate from the lien for any deficiency that may thereafter be determined to be due, unless such part of the gross estate (or any interest therein) has been transferred to a purchaser or a holder of a security interest, in which case such part (or such interest) shall not be subject to a lien or to any claim or demand for any such deficiency, but the lien shall attach to the consideration received from such purchaser or holder of a security interest, by the heirs, legatees, devisees, or distributees.

26 U.S.C. § 6324(a)(3). VNB and the Debtor note that the original executors requested a discharge under 26 U.S.C. § 2204, that the IRS did not respond within the nine months allotted to dispute the discharge, and that therefore the original executors were discharged. On this basis they contend that the lien on the property was released under section 6324(a)(3), and attached instead to the proceeds of VNB's loan.

■ This is correct. In *Vohland*, the Court of Appeals noted that "[p]roperty that was part of the 'probate' estate, *i.e.*, I.R.C. § 2033 property, is divested of the lien when it is transferred to a subsequent purchaser, but only if the estate's executor has been discharged from personal liability pursuant to I.R.C. § 2204." 675 F.2d at 1075. The court concluded that this protection rendered the statute constitutional, even though the unrecorded section 6324 lien could otherwise be enforced against purchasers regardless of notice. "A purchaser of probate property may avoid risks of loss either by establishing that the executor or administrator has been released under I.R.C. § 2204 or by securing a certificate of discharge of the lien under I.R.C. § 6325(c). Further accommodation of the purchaser is not constitutionally required." 675 F.2d at 1076 (citation omitted).

Therefore, the bankruptcy court properly concluded that VNB's interest in the property was, as a matter of law, superior to that held by the IRS.

5. *The Failure to Provide the IRS an Adversary Proceeding Was Harmless Error.*

■ The record demonstrates that both the IRS and VNB requested that the matter be disposed of by an adversary proceeding. The bankruptcy court refused to do so, apparently considering the matter to be the equivalent of a summary judgment motion. Ninth Circuit case law indicates that failure to provide an adversary proceeding is subject to a harmless error analysis. *Austein v. Schwartz (In re Gerwer)*, 898 F.2d 730, 734 (9th Cir.1990) (treatment as contested matter was harmless error). *See also City Equities Anaheim, Ltd. v. Lincoln Plaza Development Co. (In re City Equities Anaheim, Ltd.)*, 22 F.3d 954, 958–59 (9th Cir. 1994) (assuming *arguendo* that Fed. R.Bankr.P. 7001 applied, motion to enforce "drop dead" provision in settlement agreement was procedurally equivalent to motion for summary judgment); *Trust Corp. v. Patterson (In re Copper King Inn, Inc.)*, 918 F.2d 1404, 1407 (9th Cir.1990) (appellant received adversary proceeding "for all practical purposes," and appellant was not materially prejudiced).

We conclude that the error here was harmless. The IRS was essentially provided all of the procedures involved in a motion for summary judgment. The bankruptcy court correctly held, as a matter of law, that VNB's security interest was senior to the lien held by the IRS. The only prejudice alleged by the IRS is that it was denied discovery, which was necessary to resolve the section 6324(a)(3) issue because VNB knew of the lien at the time it made the loan. However, actual knowledge is not relevant. The plain language of the statute indicates that any interest transferred to a security interest holder after discharge of the executor is automatically divested of the section 6324 lien, without any regard for the holder's knowledge. 26 U.S.C. § 6324(a)(3). Moreover, the holding in *Vohland* also clearly implies this result. 675 F.2d at 1076 (a party may protect itself against the lien by determining that the executors have been discharged, an action that implies knowledge of the lien's existence).

VNB was entitled to a judgment in its favor as a matter of law. "[I]t serves no useful interest to perform elaborate procedural rites before internment of a lost cause." *City Equities Anaheim*, 22 F.3d at 959. Although the bankruptcy court should have required an adversary proceeding as request-

ed by both affected parties and as required by the clear directive of Fed.R.Bankr.P. 7001, we nevertheless conclude in this instance the error was harmless.

## CONCLUSION

The bankruptcy court erred as a matter of law in holding that the IRS's lien terminated during the pendency of the bankruptcy, and in holding that the doctrine of marshaling applied. We REVERSE these holdings.

However, the court correctly concluded that VNB's lien was senior to that of the IRS under section 6324(a)(3). The failure to provide an adversary proceeding was harmless error in this case. We therefore REVERSE IN PART, AFFIRM IN PART, and AFFIRM THE ORDER.

KLEIN, Bankruptcy Judge, concurring:

I join in the opinion of the court and write separately to emphasize my understanding that the erroneous failure to afford the parties an adversary proceeding would not have been harmless if appellant had been able in this appeal to articulate prejudice tied to the procedural differences between adversary proceedings and contested matters.

Those differences, while significant, are not so great as sometimes assumed. They lie chiefly in the absence of a complaint and an answer, the unavailability of counter-claims, cross-claims and third-party claims, and the lack of formal pretrial procedure. Contested matters are to be served in the same manner as adversary proceedings. The main difference in the taking of evidence is that Federal Rule of Civil Procedure 43(e) permits evidence to be taken on the contested matter by affidavit or deposition. The rules regarding findings of fact and conclusions of law, default and summary judgments, and judgments all apply in both adversary proceedings and contested matters.

Appellant says it was denied discovery by being forced to proceed on the basis of a contested matter. But discovery was available because Federal Rules of Civil Procedure 26–37 all apply in contested matters. The difference in discovery between contested matters and adversary proceedings lies in the time ordinarily available, and there is no difference when the court exercises its discretion to prescribe a number of months in which to conduct discovery in a particular contested matter.

Here, discovery was available and was not launched. Appellant, for example, could have propounded written discovery before the hearing or noticed a deposition. It then could have used pending discovery as a basis for arguing for a continuance or, in view of the trial court's analogy to a summary judgment, for invoking Federal Rule of Civil Procedure 56(f), which rule also applies in contested matters.

The putative denial of discovery, moreover, is harmless because appellant has been unable to point to any fact that might be discovered in orderly discovery that could possibly change the outcome of this appeal.

Nor has the appellant pointed to any other harm that could have resulted from the failure to have required a complaint, an answer, an opportunity for counterclaims, cross-claims, and third-party practice, more orderly pretrial procedure, or oral testimony in open court.

If appellant had been able to articulate prejudice resulting from any of these differences, the error would not have been harmless.