# United States Bankruptcy Appellate Panel

## FOR THE EIGHTH CIRCUIT

No. 02-6002 MN
No. 02-6003MN

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Fred H. Bame, a/s/f Al & Alma's Inc., | * | |
| a/s/f Excelsior Park Tavern Two, Inc., | * | |
| a/s/f Excelsior Financial Properties, | * | |
| a/s/f Gopher Oil Company, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| James R. Ramette, Trustee | * | Appeals from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff-Appellee, | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| United States of America and | * | |
| Minnesota Department of Revenue, | * | |
| | * | |
| Defendants-Appellants. | * | |

Submitted: May 29, 2002
Filed: July 2, 2002

Before KOGER, Chief Judge, SCHERMER and FEDERMAN, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

The United States of America and the Minnesota Department of Revenue (collectively referred to herein as the "Taxing Authorities") appeal from the bankruptcy court[1] order and judgment requiring, *inter alia*, marshaling by the Taxing Authorities. We have jurisdiction over this appeal from the final order and judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## ISSUE

The issue on appeal is whether the bankruptcy court can require the Taxing Authorities, the holders of tax claims against the debtor which are secured by liens on certain real property presently owned by the debtor's non-debtor spouse, to proceed first against such property to satisfy their tax claims prior to participating in any distribution from the bankruptcy estate. We conclude that the bankruptcy court properly applied the marshaling doctrine to require the Taxing Authorities to proceed first against the real property to satisfy their claims before participating in any distribution from the bankruptcy estate.

## BACKGROUND

In 1992, JoAnna Bame conveyed by quitclaim deed her interest in a certain luxury log home on Lake Minnetonka (the "Homestead") to herself and her husband, Fred Bame, as joint owners. On March 16, 1998, Joanna and Fred Bame reconveyed the Homestead to JoAnna Bame. During the period that the Homestead was jointly owned by Fred and JoAnna Bame, the United States of America and the Minnesota Department of Revenue filed tax liens against the Homestead on account of unpaid tax liabilities of Fred Bame.

---

[1]The Honorable Nancy C. Dreher, United States Bankruptcy Judge for the District of Minnesota.

2

On February 10, 1999, an involuntary Chapter 7 petition was filed against Fred Bame ("Debtor"). The case was converted to Chapter 11 and later reconverted to Chapter 7 on May 19, 1999. James E. Ramette ("Trustee") was appointed trustee of the Debtor's bankruptcy estate.

On June 7, 1999, the Trustee filed an adversary proceeding against the Debtor and his wife, JoAnna Bame, seeking to avoid certain transfers of property from the Debtor to his wife, including the March 16, 1998, conveyance of the Homestead from the Debtor and JoAnna Bame to JoAnna Bame. The adversary proceeding was resolved by a settlement agreement which was approved by the bankruptcy court. Pursuant to the settlement agreement, JoAnna Bame agreed, *inter alia*, to place the Homestead on the market, to use all commercially reasonable efforts to close a sale of the Homestead before September 1, 2000, and to apply the proceeds of sale, to the extent available, to pay the claims of the Taxing Authorities secured by the liens on the Homestead. For marketing purposes, the property has been tentatively divided into two lakefront parcels, one undeveloped lot and one lot improved with the residence. Despite marketing efforts, the Homestead has not yet sold.

The Homestead is encumbered by the following liens: a mortgage in favor of Bank of America recorded August 4, 1995, in the original amount of $1,207,120.00; a federal tax lien filed October 8, 1997, in the amount of $121,699.43; tax liens recorded by the Minnesota Department of Revenue in the following amounts on the following dates: $10,099.75 on June 26, 1997, $10,006.40 on August 8, 1997, $20,414.06 on October 15, 1997, $51,755.19 on January 16, 1998, and $8,585.02 on February 6, 1998; and a mortgage in favor of Republic Leasing recorded November 6, 2000, in the amount of $85,000. Additionally, JoAnna Bame has a $200,000 homestead exemption in the Homestead under Minnesota law.

The balances due on the encumbrances in favor of Bank of America and the Taxing Authorities are as follows: Bank of America asserts a balance due of

$1,309,079.64 as of October 30, 2001; the Minnesota Department of Revenue asserts a tax lien in the amount of $152,439 as of October 30, 2001; and the United States of America asserts a tax lien in the amount of $136,720.68 as of August 11, 1999.

The Taxing Authorities filed proofs of claim against the Debtor's bankruptcy estate. On February 28, 2000, the Minnesota Department of Revenue filed a priority proof of claim in the amount of $172,048.92. Of this amount, $152,439 was owed as of October 30, 2001, on account of taxes which accrued during the period the Debtor had a recorded interest in the Homestead, plus interest thereon. On August 11, 1999, the Internal Revenue Service filed a proof of claim in the amount of $136,720.68. The Internal Revenue Service's claim arises out of a civil trust fund recovery penalty against the Debtor and is secured by the federal tax lien filed October 8, 1997. As of the petition date the Debtor owned no property to which the Taxing Authorities' liens attached. Consequently, their claims are allowed as unsecured claims against the Debtor's bankruptcy estate.

The Trustee holds approximately $1 million for distribution to creditors. Total claims exceed $4.5 million. The Taxing Authorities would like to be paid from the estate funds. If the Taxing Authorities participate in the distribution of estate funds, the available funds for other creditors will be reduced from $1 million to approximately $700,000.

On February 12, 2001, the Trustee filed an adversary proceeding against the Taxing Authorities seeking an order requiring the Taxing Authorities to look first to the Homestead to satisfy their liens prior to receiving any distribution from the estate.

At trial, an appraiser testified that the value of the Homestead is $2.8 million, $1 million attributable to the undeveloped lot and $1.8 million attributable to the improved lot. The listing agent testified that he would expect the property to sell for

$2.5 million if it had no house on it and that the tear down costs would approximate $100,000.

The United States asserted that it would incur costs of up to $10,041 to foreclose on the Homestead and costs of $1,790 in connection with a redemption and sale of the Homestead.[2] The costs of maintaining the Homestead until it is sold approximate $800 per month.

The Minnesota Department of Revenue asserted that it would incur costs of up to $100,900 to foreclose on the Homestead and estimated its costs to redeem in a foreclosure situation at $1,559,000, with estimated carrying costs of $15,600 per month. An additional $4,000 would be incurred evicting the Bames if necessary.

The bankruptcy court concluded that marshaling was appropriate under the circumstances. The Taxing Authorities appeal the order and judgment requiring them to look first to the Homestead before receiving any distribution from the Debtor's bankruptcy estate.

STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error, its conclusions of law *de novo*, and its application of the equitable doctrine of marshaling for abuse of discretion. *C.T. Development Corp. v. Barnes (In re Oxford Development, Ltd.)*, 67 F.3d 683, 685 (8th Cir. 1995).

---

[2]Additionally, the United States would be required to satisfy the foreclosed mortgage in order to redeem. Therefore, its redemption costs would include the Bank of America mortgage balance in excess of $1.3 million.

DISCUSSION

Pursuant to the federal doctrine of marshaling, if a senior lien holder has a lien that extends to two funds or two potential funds, and a junior lien holder has recourse to only one of those funds, the senior lien holder may be required to exhaust the fund to which only it has access before proceeding against the fund that is also available to the junior lien holder.  *Meyer v. United States*, 375 U.S. 233, 236, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963); *C.T. Dev. Corp. v. Barnes (In re Oxford Dev., Ltd.)*, 67 F.3d 683, 687 (8th Cir. 1995); *Berman v. Green (In re Jack Green's Fashions for Men Big and Tall, Inc.)*, 597 F.2d 130, 132-33 (8th Cir. 1979).  The doctrine of marshaling is designed to promote fair dealing and justice and is applied when it can be equitably fashioned as to all parties.  *Meyer*, 375 U.S. at 237; *Oxford Dev., Ltd.*, 67 F.3d at 686-87.

Bankruptcy courts may apply the doctrine in proper cases where it is equitable to do so.  *Oxford Dev., Ltd.*, 67 F.3d at 687;  *Jack Green's Fashions for Men Big and Tall, Inc.*, 597 F.2d at 133.  The court must balance the equities to determine whether marshaling is equitable in any given situation.  *Oxford Dev., Ltd.*, 67 F.3d at 687. Marshaling is not appropriate where it will cause prejudice.  *Whitaker Corp., Juster Steel Div. v. St. Cloud Nat'l Bank & Trust (In re St. Cloud Tool & Die Co.)*, 533 F.2d 387, 391 (8th Cir. 1976).

The Taxing Authorities challenge the marshaling order on two bases: (1) governmental taxing authorities should not be subject to marshaling and (2) requiring the  Taxing Authorities to look first to the Homestead will severely prejudice the Taxing Authorities.  We address these arguments in turn.

**Applicability of Marshaling to Taxing Authorities**

The Taxing Authorities argue that the doctrine of marshaling should not be applied to governmental agencies engaged in the collection of revenue. We reject such a *per se* rule.

The Taxing Authorities cite case law from other jurisdictions for the proposition that governmental taxing authorities should be immune from marshaling. *See, e.g., Ackerman v. United States*, 424 F.2d 1148 (9th Cir. 1970); *United States v. Herman*, 310 F.2d 846 (2nd Cir. 1962); *United States v. Valley Nat'l Bank (In re Decker)*, 199 B.R. 684 (B.A.P. 9th Cir. 1996). We do not read the *Ackerman* and *Herman* cases as imposing a *per se* rule prohibiting marshaling against taxing authorities. Rather, each case specifically states that based upon the facts of the case the imposition of marshaling on the government would create a burden on the collection of revenue. *Ackerman*, 424 F.2d at 1150 ("substantial burden") and *Herman*, 310 F.2d at 848 ("extreme burden"). Each case can be interpreted as applying a balancing test to determine that the imposition of marshaling was not appropriate under the circumstances of the case, rather than imposing a *per se* rule. To the extent the *Decker* court interpreted the *Ackerman* decision as an express rejection of the application of marshaling to the enforcement of federal tax liens, we are neither bound by decisions from the Ninth Circuit Bankruptcy Appellate Panel nor by the Ninth Circuit Court of Appeals' decision on which the BAP relied.

Accordingly, we decline to hold that the application of marshaling to governmental taxing authorities is *per se* prohibited. Rather, we conclude that marshaling must be evaluated on a case by case basis, regardless of whether a taxing authority is involved.

**Equitable Application of Marshaling to the Taxing Authorities**

The Taxing Authorities argue that even if marshaling against taxing authorities is not prohibited *per se*, they will be severely prejudiced if they are required to look first to the Homestead to satisfy the tax obligations. The bankruptcy court weighed the relevant factors and concluded that the Taxing Authorities would not be unduly burdened if required to look first to the Homestead to satisfy the tax claims. The bankruptcy court noted that the Taxing Authorities have valid liens on the Homestead which they are free to pursue. The value of the property is sufficient to satisfy all liens on the property as well as JoAnna Bame's homestead exemption therein. Normally a creditor of one spouse cannot proceed against the property of the other spouse to satisfy its claim. In this instance, however, the Taxing Authorities obtained valid liens on the Homestead while Fred Bame had an interest therein. Fred Bame's subsequent transfer of his interest therein to his wife was subject to the existing tax liens. Furthermore, JoAnna Bame agreed to the payment of the liens of the Taxing Authorities from the proceeds of sale of the Homestead in the settlement agreement with the Trustee. She has thus consented to the satisfaction of the valid tax liens from the property. Consequently, no legal impediment exists which would prevent the Taxing Authorities from proceeding against the Homestead to satisfy their liens.

The Taxing Authorities claim they would be prejudiced by having to proceed against the Homestead because to do so would require them to undertake lengthy and costly foreclosure proceedings or to redeem the property if foreclosed by the mortgage holder. The bankruptcy court determined the costs which the Taxing Authorities would incur if forced to proceed against the Homestead and determined that such costs were not sufficient to render marshaling inequitable. Furthermore, the Taxing Authorities are not required to initiate foreclosure proceedings or to redeem the property. Rather, their liens could be satisfied or extinguished by a voluntary sale of the property, which is currently being actively marketed, or by a foreclosure of the consensual mortgage. In the event the property does not fully satisfy the liens of the

8

Taxing Authorities for any reason, the Taxing Authorities will be able to participate in distributions from the bankruptcy estate to satisfy any remaining allowed claims. The bankruptcy court weighed the costs and burdens on the Taxing Authorities against the facts that claims against the bankruptcy estate exceed $4.5 million; neither the Trustee nor other creditors have the option of proceeding against the Homestead; and the amount available for distribution to other creditors would be reduced from approximately $1 million to $700,000 if the Taxing Authorities were paid with estate funds.

The marshaling order does not require the Taxing Authorities to forego their lien rights; rather it asks them to exercise the rights available to them under non-bankruptcy law prior to sharing in the distribution of bankruptcy estate assets. These are the same rights the Taxing Authorities would have in the event no bankruptcy proceeding had been initiated. In contrast, if the Taxing Authorities participate in the estate distribution, they will, in essence, receive a windfall as a result of the Trustee's efforts because they will receive payment in full without incurring their normal collection costs. Additionally, JoAnna and Fred Bame will receive a windfall by keeping the Homestead free of the valid tax liens. The Debtor's unsecured creditors, on the other hand, do not have the option of proceeding against the Homestead and will receive substantially less if estate funds are used to pay the Taxing Authorities.

The bankruptcy court carefully weighed the relevant factors and determined that requiring the Taxing Authorities to look first to the Homestead for satisfaction of their liens prior to receiving a distribution from the bankruptcy estate was equitable under the circumstances. We conclude, therefore, that the bankruptcy court did not abuse its discretion in applying the doctrine of marshaling. Consequently, the marshaling order shall not be reversed.

CONCLUSION

Marshaling is an equitable doctrine applicable to all creditors, including taxing authorities, under appropriate circumstances. In this case, the bankruptcy court weighed the relevant factors and determined that marshaling was appropriate. The bankruptcy court did not abuse its discretion in so determining. Consequently, the order of the bankruptcy court is AFFIRMED.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT