FILED

2/21/2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-13-1291-PaKuD |
| STRATA TITLE, L.L.C., | Bankr. No. 12-24242-DPC |
| Debtor. | |
| STRATA TITLE, L.L.C., | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| PURE COUNTRY TOWER, LLC, | |
| Appellee. | |

Argued and Submitted on January 23, 2014
at Tempe, Arizona

Filed - February 21, 2014

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Daniel P. Collins, Bankruptcy Judge, Presiding

Appearances:     Ronald J. Ellett of Ellett Law Offices, P.C. argued for appellant Strata Title, L.L.C.; Craig Solomon Ganz of Gallagher & Kennedy, P.A. argued for appellee Pure Country Tower, LLC.

Before: PAPPAS, KURTZ and DUNN, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Chapter 11[2] debtor Strata Title, LLC ("Debtor") appeals the order of the bankruptcy court determining that Debtor's membership interest in Tempe Tower, LLC ("Tempe Tower") lapsed by operation of the parties' agreement and is no longer property of the estate.  We AFFIRM.

## FACTS

Debtor is an Arizona limited liability company; its sole member is John Lupypciw ("Lupypciw").  Pure Country Tower, LLC ("Pure Country") is also an Arizona LLC; its members are Joseph Hindbo and Jordan Hindbo.  This appeal arises out of a dispute over the respective membership interests of Debtor and Pure Country in Tempe Tower, another LLC, created by the parties solely to own and operate a commercial office building in Tempe, Arizona (the "Property").

When formed in 2012, Debtor and Pure Country each held a 50 percent membership interest in Tempe Tower.  Under the terms of the parties' Operating Agreement executed February 24, 2012, Lupypciw was designated manager of Tempe Tower.  At the center of the dispute is Schedule 1 of the Operating Agreement, which provides:

**Schedule 1**

**SCHEDULE OF PERCENTAGE INTERESTS**

The following shall be the Percentage Interests of the Members of the Company.

---

[2]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.  All "Civil Rule" references are to the Federal Rules of Civil Procedure.

| Name of Member | Percentage Interest |
|---|---|
| Strata Title, LLC | 50% |
| Pure Country Tower, LLC | 50% |

The Percentage Interests shall be subject to the following adjustments:

(1) Subject to subsection (2) below, at such time as 100% of [Pure Country's] initial Capital Contribution in the amount of $850,000 is returned to [Pure Country], the Percentage Interest of the Members shall be:

| Strata Title, LLC | 70% |
|---|---|
| Pure Country Tower, LLC | 30% |

(2) Notwithstanding anything to the contrary herein, in the event that [Pure Country] does not received 100% of its initial Capital Contribution of $850,000 on or before February 23, 2013 ("CC Return Date"), John Lupypciw hereby irrevocably assigns his and the entire right, title and interest of Strata Title, LLC in the Company to [Pure Country] or its nominee, so that following the CC Return Date [Pure Country] or its nominee shall own one hundred percent (100%) of the Percentage Interest of the Company and Strata Title, LLC, shall not be entitled to any return of any Capital Contributions or other amounts advanced or loaned to the company prior to such time. This provision shall be self-operative but John Lupypciw shall within five (5) days of [Pure Country's] request execute any instrument reasonably requested by [Pure Country] to evidence or confirm the same.

In February 2012, Tempe Tower purchased the Property using the $850,000 capital contribution from Pure Country, a $3,000 capital contribution from Debtor, and a one-year loan from Milestone Tempe, LLC ("Milestone") of $1,365,000 (the "Milestone Loan"). In July 2012, Lupypciw, acting as manager of Debtor, allegedly made a $140,000 capital contribution to Tempe Tower. In September 2012, Pure Country alleges that Debtor informed it that Tempe Tower had insufficient funds to pay the monthly payments due on the Milestone Loan. Pure Country alleges that it advanced $20,000 at that time to avoid a default. However, Tempe Tower's financial problems continued.

-3-

Debtor filed a petition for relief under chapter 11 on November 6, 2012. Debtor initially did not list its membership interest in Tempe Tower on its Schedule B, nor the Operating Agreement as an executory contract on its Schedule G. The membership interest in Tempe Tower was added by amendment to the schedules on December 10, 2012, and the Operating Agreement was disclosed as an executory contract in an amended schedule on February 21, 2013. Pure Country received no formal notice of Debtor's bankruptcy filing. However, it filed a notice of appearance in the bankruptcy case on February 12, 2013.

Pure Country contacted Milestone by phone on or about December 18, 2012. Pure Country alleges that it was during this call that, for the first time, Pure Country was informed that Tempe Tower was in default on the Milestone Loan, and that a trustee's foreclosure sale of the Property was scheduled for March 29, 2013.

On January 11, 2013, Pure Country sent a letter to Debtor demanding that Debtor take action to cure the Milestone Loan default. At about this time, Debtor had arranged to refinance the Milestone Loan using a new loan from RLS Capital, Inc. for $1.7 million with an interest rate of 18 percent, secured by the Property. The RLS Loan closed on January 23, 2013. The escrow agent, Security Title, allegedly issued a check to Milestone's agent for $1,461,191.94 in full payment of the Milestone Loan, recorded a release of Milestone's deed of trust, and recorded a deed of trust in favor of RLS, Inc.

On January 28, 2013, Milestone contacted Pure Country to inform it that the Milestone Loan was being refinanced. Pure

-4-

Country informed Milestone that it was not aware of, and would not consent to, the refinance. Instead, working with Security Title, Pure Country unwound the refinancing. Milestone returned the loan proceeds to RLS, which executed a release of its deed of trust.

In the bankruptcy case, on February 12, 2013, Debtor filed a motion for an order deeming the Operating Agreement of Tempe Tower rejected as an executory contract (the "Rejection Motion"). Debtor argued that LLC operating agreements are generally considered executory contracts under the Bankruptcy Code. Debtor further suggested that Pure Country was using its powers under the Operating Agreement in bad faith and in an attempt to obtain ownership of Debtor's equity in the Property for itself.

On February 14, 2013, Pure Country removed Lupypciw as manager of Tempe Tower and filed papers with the Arizona Corporation Commission designating Pure Country as the new manager of Tempe Tower. Debtor does not contest that Pure Country thereby became the manager of Tempe Tower.

Pure Country filed an objection to Debtor's Rejection Motion on February 20, 2013. Pure Country argued that the Operating Agreement was not an executory contract. Alternatively, Pure Country urged that if the Operating Agreement were rejected, then the bankruptcy court should also declare that Debtor would thereby lose all membership rights in Tempe Tower.

The bankruptcy court conducted an expedited hearing on the Rejection Motion on February 20, 2013. In an order entered February 22, 2013, the court ruled that the Operating Agreement was an executory contract and granted Debtor's Rejection Motion.

-5-

However, the court's order also provided that:

> This order is strictly limited to Debtor's rejection of the Operating Agreement. Nothing contained in this order shall be construed to prejudge any of the following issues: the damages (if any) which arise from rejection; [or] the terms or enforceability of Schedule 1; the future governance of Tempe Tower's business activities[.]

The order granting the Rejection Motion was not appealed.

The February 23, 2013, deadline in Schedule 1 for repayment of the $850,000 capital contribution to Pure Country expired without payment. On March 7, 2013, Pure Country filed a motion in the bankruptcy case for an order enforcing the terms of Schedule 1 (the "Enforcement Motion"). In particular, the Enforcement Motion prayed for entry of an order by the bankruptcy court directing Debtor to specifically perform its obligations under the Operating Agreement to execute an assignment of Debtor's membership interest in Tempe Tower to Pure Country. Debtor responded to the Enforcement Motion on March 20, 2013, arguing that specific performance was not a remedy available to Pure Country after rejection of the Operating Agreement as an executory contract.

The bankruptcy court held a hearing on the Enforcement Motion on March 21, 2013. On March 28, 2013, the bankruptcy court entered a minute order providing that:

> At issue is Schedule 1 attached to the Operating Agreement and its effect upon the debtor and others. The Court hereby finds that remedies identified in Schedule 1 are not stayed as to Mr. Lupypciw by this bankruptcy proceeding. The court does not presently make any decision relative to whether there is a stay in place as to Strata's interest in Tempe Tower LLC nor does the Court issue any decision relative to whether specific performance can or cannot be compelled to require [Debtor] to accomplish certain events or transactions. . . . By agreement of the parties on the

> record, counsel for Pure Country shall prepare a form of order acknowledging Strata's consent to the filing of a bankruptcy petition by Tempe Tower LLC. . . . All other issues pertaining to the [Enforcement Motion] have not been decided by this Court and await further decision by the Court.

Undeterred, on April 13, 2013, Pure Country filed a Motion for Determination That Debtor Assigned Membership Interest in Tempe Tower, LLC Pre-Petition; and Alternative Request for Stay Relief to Either: (1) Effectuate the Transfer of Membership Interest to Pure Country Tower, LLC, or (2) Allow Pure Country Tower, LLC to Foreclose Its Membership Interest (the "Membership Motion"). Pure Country argued that before bankruptcy, Debtor had absolutely assigned its membership interest in Tempe Tower to Pure Country pursuant to Schedule 1, and that Debtor had no further interest in Tempe Tower. Pure Country sought a declaratory judgment that all Debtor's membership interest in Tempe Tower was assigned to Pure Country, and that the Debtor's interest was not and never has been property of the estate. In the alternative, Pure Country argued that, if the bankruptcy court were to find that the Debtor still held an interest in Tempe Tower, Pure Country should be granted relief from the automatic stay so it could enforce its rights against Debtor as provided in the Operating Agreement.

Debtor responded on April 17, 2013, arguing that Pure Country's Membership Motion was procedurally flawed because the relief it requested required an adversary proceeding. Debtor argued that, if the issues raised in the Membership Motion were adjudicated in a contested matter, not an adversary proceeding, its due process rights would be violated.

-7-

The bankruptcy court held its first hearing on the Membership Motion on April 17, 2013. The court directed the parties to provide supplemental briefing and continued the hearing.

In its supplemental briefing, in addition to arguing that there was no absolute assignment of Debtor's membership interest effected in Schedule 1, Debtor asserted that Pure Country held, at best, an unperfected security interest in Debtor's membership interest in Tempe Tower.[3] Pure Country responded with its supplemental brief on May 3, 2013. It argued that whether it had properly perfected a security interest in Debtor's membership interest was irrelevant, because it never asserted that its interests in Tempe Tower were secured, but had instead been absolutely assigned by Debtor.

The bankruptcy court held the continued hearing on the Membership Motion on May 7, 2013. After listening to counsel for Debtor, Pure Country, Milestone, and Tempe Tower, the court took the issues under advisement. On June 6, 2013, the bankruptcy court entered an "Under Advisement Decision Determining: (1) Membership Interests Are No Longer Estate Property; and (2) Order Lifting the Section 362(a) stay." (the "Decision"). In the Decision, the court determined that:

- On the petition date, Debtor's membership interest in Tempe Tower became property of the bankruptcy estate. What the Debtor owned at the time of filing the petition was a 50 percent

---

[3] The question whether LLC membership interests involve security interests is not on appeal.

-8-

membership interest in Tempe Tower.

- If Schedule 1 created a security interest in either of the parties' membership interests in Tempe Tower, that security interest was not perfected.

- Debtor's rejection of the Operating Agreement as an executory contract did not affect the parties' substantive rights under the Operating Agreement, which are governed by Arizona state law.

- Pursuant to A.R.S. § 29-682(B), an LLC operating agreement may contain provisions regarding changes in classes of members, and rights to acquire members' interests.

- Under terms of the Operating Agreement and Schedule 1, "the Debtor's membership interest in Tempe Tower could only remain property of the Debtor if it paid $850,000 to Pure Country by February 23, 2013.  Having failed to do so, the Debtor ceased to own any membership interests in Tempe Tower as of February 24, 2013."

- "Schedule 1 required no action by Pure Country, or any other party, to change the membership interest of the Debtor in Tempe Tower.  Instead, the simple passage of time changed the nature of the property the Debtor once owned."

- "The nonpayment of $850,000 by February 23, 2013 results in Pure Country owning 100% of the LLC membership interests with no further action by any party."

- "To the extent stay relief is necessary for Pure Country to proceed as it wishes, stay relief is granted to Pure Country."

Debtor filed a timely appeal of the Decision on June 20, 2013.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). The Panel's jurisdiction is based upon 28 U.S.C. § 158. Pure Country challenges our jurisdiction because it alleges that this appeal is moot. We discuss that argument below.

**ISSUES**

Whether this appeal is moot.

Whether the bankruptcy court erred by not requiring Pure Country to commence an adversary proceeding to determine the parties' rights, and the extent of Debtor's membership interest, in Tempe Tower.

Whether the bankruptcy court violated Debtor's due process rights.

**STANDARDS OF REVIEW**

We determine our jurisdiction, including mootness issues, de novo. <u>Professional Programs Grp. v. Dep't of Commerce</u>, 29 F.3d 1349, 1352 (9th Cir. 1994).

The bankruptcy court's interpretation of the Rules is reviewed de novo. <u>Moldo v. Blethen (In re Blethen)</u>, 259 B.R. 153, 155 (9th Cir. BAP 2000).

Whether the bankruptcy court's procedures comport with due process is reviewed de novo. <u>Garner v. Shier (In re Garner)</u>, 246 B.R. 617, 619 (9th Cir. BAP 2000).

**DISCUSSION**

Significantly, in this appeal Debtor raises only procedural

-10-

challenges to the Decision by the bankruptcy court.[4] Debtor does not contest the bankruptcy court's substantive analysis or its conclusions concerning the continuing vitality of Debtor's membership interest in Tempe Tower. Debtor implicitly acknowledged that Arizona law allows LLC operating agreements to include provisions enforceable in bankruptcy cases modifying the extent of membership interests or of members' rights to acquire other members' interests; that pursuant to Schedule 1, Debtor could only retain its membership interest in Tempe Tower if Pure Country's $850,000 capital contribution was repaid by February 23, 2013; and that, as the result of nonpayment, Debtor ceased to own any membership interest in Tempe Tower as of February 24, 2013. Instead, Debtor's arguments in this appeal focus solely on the bankruptcy court's acquiescence in what Debtor argues was an inappropriate procedure employed by Pure Country to obtain these rulings by the court. As discussed below, we affirm the bankruptcy court's decision in this case.

---

[4] In Debtor's opening brief, it also asserted that the bankruptcy court erred by ordering the specific performance of a rejected executory contract. Debtor's Op. Br. at 12. However, as Pure Country points out, the bankruptcy court never referred to "specific performance" or in any way ordered the parties to perform under the Operating Agreement. Pure Country's Br. at 28. Indeed, as the bankruptcy court stated, "the simple passage of time changed the nature of the property the Debtor once owned." In reply, Debtor appears to concede that this issue is not on appeal, but persists in requesting that the Panel instruct the bankruptcy court on remand that specific performance is not available as a remedy for Pure Country. Debtor's Reply Br. at 11-12. The Panel declines to address the specific performance issue.

**I.**

**This appeal is not moot.**

Before reviewing Debtor's procedural arguments, we first address Pure Country's contention that this appeal is moot. Pure Country notes that, "[g]enerally, an appeal will be dismissed as moot when events occur which prevent the appellate court from granting any effective relief even if the dispute is decided in favor of the appellant." Pure Country's Br. at 15 (quoting Matter of Combined Metals Reduction Co., 557 F.2d 179, 187 (9th Cir. 1977). Pure Country argues that, in this case, the Panel cannot offer any relief whatsoever because Debtor failed to obtain a stay of the Decision pending resolution of this appeal, and because Tempe Tower sold the Property on August 6, 2013 to JAH Ventures, LLC, an alleged "good faith purchaser," for $2.2 million. Pure County further contends that since by this appeal Debtor seeks only to retain its membership interest in Tempe Tower, and the sole asset of Tempe Tower was the Property, Debtor has nothing to gain if it prevails on appeal because any resulting membership interest in Tempe Tower would be worthless.

The test for mootness is whether an appellate court can fashion any effective relief in the event that it decides in favor of the appellant. Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 627 F.3d 869, 880-81 (9th Cir. 2012) (emphasis added). In particular, equitable mootness arises when "a comprehensive change of circumstances has occurred so as to render it inequitable for a court to consider the merits of the appeal." Id. at 880-81. In cases such as this one, the principal question we must answer is

-12-

whether the appeal "present[s] transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply." Lowenschuss v. Selnick (In re Lowenschuss), 170 F.3d 923, 933 (9th Cir. 1999). The party arguing for dismissal based on mootness, "bears the heavy burden of establishing that we cannot provide any effective relief." United States v. Gould (In re Gould), 401 B.R. 415, 421 (9th Cir. BAP 2009).

We conclude that the issues are not moot in this case because it might be possible for the Panel to fashion relief were it to hold for Debtor.

First, Pure County correctly observes that Debtor, through this appeal, is attempting to retain a membership interest in Tempe Tower, not an ownership interest in the Property, which was sold during the appeal. However, Pure Country's argument that the sale of the Property moots this appeal is incorrect. If Debtor succeeds on appeal, it may, through its membership interest in Tempe Tower, attempt to pursue state law claims against Milestone and Pure Country.

Second, even though the Property was sold, it is not accurate to assume that the Panel can provide no effective relief to Debtor. As noted above, the Property was sold by Tempe Tower's manager, Pure Country, to JAH Ventures, LLC. Pure Country acknowledges that the general partner of JAH Ventures, LLC is JAH Management, LLC. The managing members of JAH Management, LLC are Joseph Hindbo and Jordan Hindbo, who are also the only members of Pure Country. In a practical sense, then, Joseph and Jordan Hindbo effectively sold the Property to

-13-

themselves. As the sole members of Pure Country, Joseph and Jordan Hindbo were the beneficiaries of the Decision by the bankruptcy court, and similarly, control Pure Country's participation in this appeal. Under these circumstances, it would not be impossible for the bankruptcy court or this Panel to fashion some sort of relief for Debtor. See In re Sun Valley Ranches, 823 F.2d 1373, 1375 (9th Cir. 1987); Paulman v. Gateway Venture Partners III (In re Filtercorp), 163 F.3d 570, 577 (9th Cir. 1998) (reaffirming the Sun Valley rule that, where real property is sold to a party before the court, the court may be able to fashion effective relief).

Given these realities, Pure Country has not satisfied the "heavy burden of establishing that [the Panel] cannot provide any effective relief." This appeal is not moot.

## II.

**The bankruptcy court's decision to proceed in a contested matter rather than to require an adversary proceeding was harmless error.**

The bankruptcy court considers disputed matters in two contexts. Adversary proceedings are separate lawsuits within the bankruptcy case and have all the attributes of a lawsuit in the district court, including the filing and service of a formal complaint and application of most of the Civil Rules, as incorporated or modified by the Part VII of the Bankruptcy Rules. In a contested matter, there is no summons and complaint, pleading rules are somewhat relaxed, counterclaims and third-party practice do not apply, and much pre-trial procedure is either restricted or dispensed with in the interest of time and simplicity. Contested matters are governed by other Rules,

-14-

mostly by Rule 9014. Khachikyan v. Hahn (In re Khachikyan), 335 B.R. 121, 125-26 (9th Cir. BAP 2005). Debtor contends in this appeal that the bankruptcy court erred by resolving the issues in a contested matter rather than by adversary proceeding. Even so, we conclude any error by the bankruptcy court does not require reversal.

Rule 7001 lists ten categories of proceedings specifically identified as adversary proceedings; Debtor focuses on three of them. Under Rule 7001, "[t]he following are adversary proceedings: (1) a proceeding to recover money or property . . . ; (2) a proceeding to determine the validity, priority or extent of a lien or other interest in property . . . ; (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing . . . ."

Debtor argues that because Pure Country's Membership Motion sought a declaration by the bankruptcy court concerning the extent of Debtor's and Pure Country's "interest in property," the bankruptcy court could render such a decision only in an adversary proceeding, not in a contested matter. Debtor points out that, through Lupypciw, it obtained the RLS Loan by which Tempe Tower could pay off its secured loans, and qualify for additional loans to repay the $850,000 capital contribution to Pure Country. According to Debtor, if Pure Country had commenced an adversary proceeding, instead of filing the Membership Motion, Debtor could have used that procedural vehicle to prove that Pure Country and Milestone wrongfully conspired to undo the RLS Loan, which rendered Tempe Tower unable to pay off Pure Country. As a result of this conduct, Debtor urges, Pure Country should not

-15-

have been allowed to invoke Schedule 1 to deprive Debtor of its interest in Tempe Tower.

As a general proposition, Debtor is correct that an adversary proceeding is usually required to determine the extent of a debtor's interest in property. GMAC Mortg. Corp. v. Salisbury (In re Loloee), 241 B.R. 655-60 (9th Cir. BAP 1999). And, in particular, an adversary proceeding is the preferred route when considering the extent of a debtor's ownership interest in a business. In re Cadiz Props., Inc., 278 B.R. 744 (Bankr. N.D. Tex. 2002) (extent of stock ownership); In re Corky Foods Corp., 85 B.R. 903, 904 (Bankr. S.D. Fla. 1988) (extent of debtor's interest in limited partnership); In re Colrud, 45 B.R. 169 (Bankr. D. Alaska 1984) (debtor's interest in mortgaged property). However, neither the Ninth Circuit nor this Panel have ever held that the requirement for an adversary proceeding under these circumstances is absolute. Instead, where the record shows that the parties proceeded by a contested matter under Rule 9014, there was adequate notice to the parties concerning the nature of the issues raised in a contested motion proceeding, extensive hearings occurred, supplemental briefing was submitted, and the parties were given "ample time to air [their] position[s] . . . for all practical purposes an adversary proceeding was held." Trust Corp. of Mont., Inc. v. Patterson (In re Copper King Inn, Inc.), 918 F.2d 1404, 1407 (9th Cir. 1990).

In reviewing the bankruptcy court's decision to allow the contest between Debtor and Pure Country to be litigated in a contested matter rather than in an adversary proceeding, we apply a harmless error analysis. Korneff v. Downey Reg'l Med. Ctr.

-16-

Hosp., Inc. (In re Downey Reg. Med. Ctr. Hosp., Inc.), 441 B.R. 120, 127 (9th Cir. BAP 2010) ("The bankruptcy court's decision not to require an adversary proceeding is subject to a harmless error analysis."); see also Austein v. Schwartz (In re Gerwer), 898 F.2d 730, 734 (9th Cir. 1990); USA/Internal Revenue Service v. Valley Nat'l Bank (In re Decker), 199 B.R. 684, 689 (9th Cir. BAP 2006). The harmless error standard is especially apt where the bankruptcy motion in question was the procedural equivalent of a motion for summary judgment, with the issues to be decided by the bankruptcy court dealing with questions of law, not disputed fact. City Equities Anaheim, Ltd. v. Lincoln Plaza Development Co. (In re City Equities Anaheim, Ltd.), 22 F.3d 954, 958-59 (9th Cir. 1994).

In this case, while the bankruptcy court possibly erred in not requiring that an adversary proceeding be commenced by Pure Country to obtain a declaration that Debtor's interest in Tempe Tower had lapsed under Schedule 1,[5] we conclude that such error

---

[5] Of course, the Membership Motion requested not only a determination by the bankruptcy court that Debtor's membership interest terminated post-bankruptcy by operation of the Operating Agreement, but also sought relief from the automatic stay "to the extent the Debtor's membership interests were still protected by § 362(a)(3) or if further acts are necessary to obtain possession and control of the Debtor's membership interests." Decision at 9. Indeed, the bankruptcy court granted stay relief to Pure Country in the Decision.

Clearly, relief from the automatic stay is appropriately sought via a contested matter, not through an adversary proceeding under Rule 7001. See Rule 4001(a) (instructing that "[a] motion for relief from an automatic stay . . . shall be made in accordance with Rule 9014 . . . .") (emphasis added); Johnson
(continued...)

-17-

was harmless. Pure Country's Membership Motion was clear in its factual allegations, its legal theories, and in describing the relief it sought. There were two hearings conducted concerning the Membership Motion. In addition to its original opposition, Debtor was afforded an opportunity to make supplemental submissions contesting the Membership Motion before the second hearing occurred, and the issues were comprehensively briefed by the parties. As it turns out, the bankruptcy court decided that, as a matter of law, Schedule 1 was effective despite Debtor's bankruptcy filing, and that based solely on the undisputed failure to timely repay Pure Country's $850,000 capital contribution, Debtor lost its interest in Tempe Tower. On this record, it is difficult to understand how Debtor was procedurally disadvantaged by the bankruptcy court's approach.

As Pure Country correctly observes, Debtor has not provided any specific examples of how the contested proceedings employed in this case caused it any significant prejudice. See Downey Reg. Med. Ctr. Hosp., 441 at 128 (requiring the party claiming

---

[5](...continued)
v TRE Holdings, LLC (In re Johnson), 346 B.R. 190, 195 (9th Cir. BAP 2006). Strata conceded before the bankruptcy court that a contested hearing was the proper procedure for a request for relief from stay. Hr'g Tr. 46:19-22, April 17, 2013 ([Counsel for Debtor]: "I admit freely that stay relief motions don't require an adversary."). The Panel has also held that when the relief sought in a declaratory motion is a determination that the automatic stay does not apply to a particular action, then the proper procedure is a contested motion. In re Wade, 115 B.R. 222, 225 (9th Cir. BAP 1990); accord 9 COLLIER ON BANKRUPTCY ¶ 4001.02[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed., 2013).

prejudice to identify discoverable facts or witnesses that would "have changed the outcome of the case."). Instead, Debtor's claims of unfairness are vague and overstated: "Pure Country . . . obstinately refused to comply with the adversary rules. Plainly, Pure Country wanted to avoid, at any cost, an evidentiary proceeding where its own conspiracy, bad faith and bre[a]ch of fiduciary [obligations] would be exposed for all to see." Debtor's Op. Br. at 10.[6]

In particular, Debtor argued that it was entitled to a trial in this matter. But by this contention, Debtor seemingly fails to understand that contested matters may include evidentiary, trial-like hearings. See Rule 9014(d).[7] As the Advisory Committee note for Rule 9014(d) explains:

If the motion cannot be decided without resolving a

---

[6] Debtor argues that Pure Country breached its fiduciary duty, the parties' contract, and acted in bad faith by conspiring with Milestone and Security Title to undo Debtor's RLS Loan, which led to Debtor's and Tempe Tower's inability to pay Pure Country the $850,000. If true, under Arizona law, the preferred remedy for such wrongs is an action for damages. Burkons v. Ticor Title Ins. Co., 813 P.2d 710 (Ariz. 1991). At oral argument, counsel for Debtor was repeatedly questioned by the Panel concerning why Debtor did not initiate its own adversary proceeding, or better yet, simply pursue an action for damages against Pure Country in state court. The bankruptcy court made a similar inquiry. Hr'g Tr. 46:23-47. While apparently conceding that Debtor was not without a remedy under state law, Debtor's counsel's response was that Debtor would prefer to prevent Pure Country from forfeiting Debtor's interest in Tempe Tower rather than suing Pure Country for damages. Hr'g Tr. 47:12-15.

[7] "**Testimony of Witnesses**. Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding." Rule 9014(d).

-19-

> disputed material issue of fact, an evidentiary hearing must be held at which testimony of witnesses is taken in the same manner as testimony is taken in an adversary proceeding or at a trial in a district court civil case.

2002 Advisory Committee Note to [Rule] 9014(d); see also Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC), 481 B.R. 334, 344 (9th Cir. BAP 2012) (disputed material facts in a contested matter ordinarily require an evidentiary hearing). In addition, Debtor has not shown that it at any time formally requested that the bankruptcy court conduct an evidentiary hearing.

Debtor also argues that Pure Country was attempting to avoid discovery: "If in fact Milestone and Pure Country were not conspiring together, then they should have nothing to fear from simple depositions and discoveries. The fact that they have gone to such extremes to avoid discovery utterly belies their contention that [they] have nothing to hide." Debtor's Reply Br. at 4. While not articulating what sort of facts it would expect to discover, of course, Debtor's argument ignores that the discovery rules are also applicable in contested matters. See Rule 9014(c) (listing as applicable in contested matters the discovery procedures available in adversary proceedings via Rules 7026, and 7028-7037); In re Downey Med. Ctr.-Hosp, Inc., 441 B.R. at 129 (noting that discovery would be available in a contested proceeding similar to this appeal, i.e., immediately following the filing of an emergency motion or before the continued hearing on the motion). And, again, we lack sympathy for Debtor's argument that it lacked sufficient time to conduct discovery when, in fact, it never formally requested discovery in

-20-

the bankruptcy court. In short, we conclude, therefore, that there is no merit to Debtor's suggestion that, through use of a contested matter, the bankruptcy court allowed Pure Country to "evade" discovery.

The Panel has developed a list of factors that we consider in determining whether prejudice has resulted from a bankruptcy court's decision to proceed by contested matter rather than adversary proceeding: (1) the material facts were few and undisputed, (2) the dispositive issues were pure questions of law, (3) neither party expressed any discontent with the contested matter procedures the bankruptcy court utilized, and (4) this Panel was "satisfied that neither the factual record nor the quality of the presentation of the arguments would have been materially different had there been an adversary proceeding." Ruvacalba v. Munoz (In re Munoz), 287 B.R. 546, 551 (9th Cir. BAP 2002). Under this rubric, Debtor has not shown it was prejudiced.

First, although Debtor argues that there were disputed facts and law, those disputes do not implicate the facts and law at the heart of the appeal: that there was an Operating Agreement that by operation of law terminated the membership interest of Debtor on February 24, 2013. In other words, the material facts concerning the nature of the parties' agreement and Debtor's failure to pay under the Operating Agreement relied upon by the bankruptcy court were undisputed.

Admittedly, under the third criterion, Debtor protested to the bankruptcy court that a contested matter was inappropriate and sought an adversary proceeding. Even so, we are satisfied

-21-

that neither the factual record, nor the quality of the presentation of the arguments would have been materially different had there been an adversary proceeding. Instead, it appears that Debtor had adequate notice of the issues raised in the Membership Motion, extensive hearings were conducted, supplemental briefing was submitted, the parties had ample time to air their positions, and for all practical purposes, an adversary proceeding was held in this case. In re Copper King Inn, Inc., 918 F.2d at 1407.

Although the first hearing was scheduled by the court on shortened notice, Debtor received both a second hearing and an opportunity for supplemental briefing. Debtor's protests that it needed an evidentiary hearing are of no moment, because an evidentiary hearing could have been held in the bankruptcy court had Debtor requested one, which it did not do. And the evidence that Debtor hoped to present to the bankruptcy court, as it turned out, was irrelevant to the central issue, whether Debtor's membership interest terminated by operation of contract and of law on February 24, 2013. In short, the record in the bankruptcy court was developed to a sufficient degree that any arguably enhanced record generated in an adversary proceeding likely would not have been material.

Absent a credible argument or specific examples from Debtor showing it suffered some procedural disadvantage as a result of the procedures used in the bankruptcy court, that the court allowed the action to proceed as a contested motion rather than adversary proceeding is not a sufficient reason to disturb the Decision. Even if the bankruptcy court erred in not requiring an

-22-

adversary proceeding, such error did not affect the substantial rights of the parties, is not inconsistent with substantial justice, and was therefore harmless. 28 U.S.C. § 2111; Civil Rule 61, incorporated by Fed. R. Bankr. P. 9005 (requiring that a court "disregard all errors and defects that do not affect any party's substantial rights"); In re Copper King Inn, Inc., 918 F.2d at 1406-07; Laskin v. First Nat'l Bank (In re Laskin), 222 B.R. 872, 874 (9th Cir. BAP 1998); United States v. Valley Nat'l Bank (In re Decker), 199 B.R. 684, 689-90 (9th Cir. BAP 1996).

## III.

### Debtor was not deprived of due process.

The fundamental components of due process are the right to be heard after notice reasonably calculated under the circumstances to apprise a party of the pendency of a matter, and adequate to afford that party of an opportunity to object. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Here, in a single page in its opening brief, Debtor claims the bankruptcy court's procedures in this case did not accommodate rights to due process; the principal authority Debtor cites to support this argument is Société Int'l v. Rogers, 357 U.S. 197 (1958):

> The Supreme Court had made it clear that the 5th Amendment Due Process Clause imposes "constitutional limitations upon the power of courts, even in aid of their own valid processes" preventing resolution of an action without first "affording a party the opportunity for a hearing on the merits of his cause."

Debtor's Op. Br. at 12, quoting Société, 357 U.S. at 209 (emphasis added).

-23-

The due process requirements Debtor invokes are satisfied in both adversary proceedings under Rule 7001 and contested matters under Rule 9014. Fortune & Faal v. Zumbrun (In re Zumbrun), 88 B.R. 250, 253 (9th Cir. BAP 1988). There can be no doubt that Debtor was afforded more than adequate notice of the filing of the Membership Motion, and an ample opportunity to object and be heard concerning the merits of its cause. It responded to the Membership Motion, and after an initial hearing on the motion, the bankruptcy court allowed Debtor additional time to file a supplemental response. Société Int'l, 357 U.S. at 209 (observing that only one hearing with notice meets the requirements for due process). The court conducted a continued, second hearing on the Membership Motion, took the issues under advisement, and entered a detailed Decision explaining its findings, conclusions, and reasons for its rulings.

As the Panel has previously ruled, due process in bankruptcy proceedings is not violated where property interests are determined in a contested matter where the bankruptcy court had jurisdiction, notice of the motion was provided, the party was represented at all hearings by counsel and had a meaningful opportunity to respond. In re Downey Req'l Med. Ctr.-Hosp., 441 B.R. at 128. Here, the bankruptcy court had jurisdiction over the issues, Debtor had adequate notice of the Membership Motion and was given ample opportunity to respond, and Debtor was represented by counsel who was heard at both hearings. Simply stated, Debtor was not denied due process in this case.

**CONCLUSION**

To the extent the bankruptcy court may have erred in not requiring that Pure Country seek relief via an adversary proceeding, that error was harmless. Debtor's right to due process was not violated. We therefore AFFIRM the Decision of the bankruptcy court.